USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/25/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JARRELL D. PEREZ,

        Plaintiff,

-against-

LOUIS MOLINA, et al.,

        Defendants.

23-CV-801 (JHR) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    Pro se plaintiff Jarrell D. Perez, currently incarcerated in the Franklin Correctional Facility in Malone, New York, brought this pro se action against various officials and employees of the New York City Department of Correction (DOC) on January 30, 2023, alleging violations of his constitutional rights while he was housed at Rikers Island, a New York City jail, in 2022 and 2023. In his Amended Complaint, filed on September 22, 2023, plaintiff describes himself as a "wheelchair bound paraplegic" and alleges, among other things, that he was isolated in a single-use cell in the West Facility, with "no programming or services," where he was physically assaulted by DOC Captain Terrance Shaw, "with a large canister of mace in the face, for trying to raise awareness that mental health services was needed." Am. Compl. (Dkt. 8) at 4-5.

    An Incident Report produced in discovery and dated March 21, 2023, confirms that a "use of force" (UOF) incident took place on February 13, 2023, beginning at approximately 1251 hours:

> Person in Custody (PIC) Jarrell Perez ignited a still fire inside his cell's slot. Staff extinguished the fire from a distance as PIC Perez threw things towards staff (12:56:00 at 43.24). Fire safety responded to the area speaking with PIC Perez. The Probe Team responded to the area to secure PIC Perez who resisted cuffing procedures. Officers Alex Alicea, #9977 and Charles Smith, #18321 attempted to grab PIC Perez's arms, but he resisted. Captain Shaw #1683 deployed an application of chemical agents towards PIC Perez, gaining compliance. (Handheld video – WE213230700SP9UOF1256(1).MTS at 3:15 minutes mark). Perez was secured, escorted, and secured in an Intake shower pen, terminating the incident.

Incident Rep. (Dkt. 78 at ECF pp. 13-17) at DEF000041.

The Incident Report noted that Captain Shaw deployed the chemical agent "at a distance of less than three feet," Incident Rep. at DEF000042, for which he required "chemical agent retraining." *Id*. at DEF000043.[1] However, it concluded that "the force used in this incident was unavoidable, necessary, proportionate, and in accordance with Directive 5006R-D to gain compliance and prevent injuries," and recommended that the incident be closed. *Id*.

During discovery, defendants produced the handheld video (including the footage referenced in the Incident Report) showing the Probe Team in plaintiff's cell. They also produced body-worn camera (BWC) footage capturing some of the events leading up to the deployment of the Probe Team. But they failed to preserve – and hence failed to produce in discovery – the Genetec (surveillance) video from the relevant camera angles in the West Facility during the UOF (some of which was also referenced in the Incident Report). On December 11, 2024, the Court directed defendants to show cause why they should not be sanctioned for that failure. Order to Show Cause (OSC) (Dkt. 63) at 1.

After careful review of the parties' submissions in response to the OSC – including the extant video evidence – the Court finds that Genetec footage was lost because defendants failed to take reasonable steps to preserve it; that it cannot be restored or replaced through additional discovery; and that plaintiff has been prejudiced thereby. However, the record does not support the inference that defendants acted with the specific intent to deprive plaintiff of the evidence.

---

[1] This is not the only case in which Captain Shaw is alleged to have exercised unreasonable force by deploying chemical spray at close range against a Rikers Island detainee. *See Urena v. City of New York*, 2024 WL 4149182, at *2-5 (S.D.N.Y. Sept. 10, 2024) (denying defendants' summary judgment motion after concluding – based largely on the Genetec footage, which in that case was preserved – that a jury could find that Captain Shaw's use of the spray against a detainee locked in a single-person intake cell was unreasonable and disproportionate). The incident at issue in *Urena* occurred on April 21, 2022, *see id*. at *1, approximately ten months before Shaw used pepper spray on plaintiff Perez.

Consequently, sanctions must be limited to "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Court concludes that the most appropriate sanction is to permit plaintiff to present evidence to the jury (should this action reach trial) that additional footage of the incident existed; that it was identified and reviewed by DOC personnel when preparing the Incident Report; that it should have been preserved and produced in discovery; but that it was not preserved, was not produced, and cannot now be restored.

## Background

On August 6, 2024, during discovery, the Court directed defendants to "identify and collect any video footage relevant to this action." (Dkt. 40 at 1.) On October 11, 2024, the New York City Law Department (Law Department), which represents defendants, reported that the video files provided to it by DOC were "relevant to the action as, upon information and belief, they capture the incident in its entirety," but unfortunately were "inoperable." (Dkt. 51 at 1-2.) Defendants requested an extension, which the Court granted, to "allow [them] sufficient time to obtain operable videos from DOC, provide them to plaintiff, and then conduct his deposition." (*Id*. at 2.) On October 25, 2024, the Law Department reported that it had "received playable copies of the remaining video footage from DOC," and would produce them to plaintiff at the Franklin Correction Facility. (Dkt. 56 at 1.) Thereafter, defendants produced a number of videos to plaintiff on a flash drive, and he was able to review them. However, during his deposition, plaintiff informed defendants' counsel that the Genetec videos on the flash drive showed camera angles from a different facility altogether.

During a December 11, 2024 status conference, defendants confirmed that they had produced playable copies of the correct handheld and BWC footage, but failed to produce the Genetec camera angles from the area of plaintiff's cell on February 13, 2023, because they were

3

not preserved by DOC. During the same conference, plaintiff stated that none of the videos produced to him captured the moment when Captain Shaw used the chemical spray, largely because the view from the handheld camera recording the Probe Team was blocked by the bodies of the officers who participated in the UOF. According to plaintiff, however, a Genetec camera was mounted on the ceiling, directly outside of his cell, and consequently would have had a better view of the officers' actions. After the conference, I directed defendants to show cause "why they should not be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2), and/or 37(e) for failing to preserve and produce the Gentec [sic] footage as previously ordered." OSC at 1. Additionally, the Court directed defendants to submit electronic copies of the handheld and BWC footage, which they did on January 9, 2025.

### **The Videos**

Only one of the videos produced in discovery – the handheld video identified as WE213230700SP9UOF1256(1).MTS – shows the Probe Team entering plaintiff's cell, handcuffing him, and bringing him out. That video clearly shows a team of six correctional officers in body armor, led by Captain Shaw, entering plaintiff's cell and attempting to handcuff him. Initially, plaintiff ignored the officers' instructions and resisted being cuffed. However, because the videographer was bringing up the rear of the Probe Team, the camera's view is frequently blocked by the bodies of the officers between it and plaintiff. From 2:27 to 2:37, Captain Shaw can be heard repeatedly directing plaintiff to put his hands behind his back. Thereafter, the video shows Shaw and other officers physically grappling with plaintiff, while continuing to ask for his compliance, but the details of the struggle are obscured by the helmet of the officer immediately in front of the camera. At 3:23, the camera catches a glimpse of plaintiff's hands, secured behind

4

his back, and at 3:26, the video clearly shows the officers sitting plaintiff up in his wheelchair with his hands securely cuffed. By 3:42, plaintiff is being wheeled out of the cell, coughing.

The handheld video does not show the actual use of the chemical agent by Captain Shaw. Thus, it does not assist in determining whether the spray was used to induce compliance, as the Incident Report describes, or whether – as plaintiff charges – he was "handcuffed with his hands behind his back, and then maliciously sprayed directly in the facial area with a large canister of pepper spray (MK9). In that exact order." Pl. 1/24/25 Ltr. (Dkt. 78) at ECF pp. 7, 9.

### **The Parties' Positions**

On January 9, 2024, defendants submitted a letter-brief noting that DOC's video retention policy "requires that all videos be preserved for ninety days, after which they are automatically deleted if not specifically preserved." Def. 1/9/25 Ltr. (Dkt. 68) at 2. Where, as here, DOC is "notified of a Use of Force incident within ninety days of the incident," it is "required to preserve any video capturing the incident until the later of (i) four years, or (ii) six months following the conclusion of an investigation into the Use of Force Incident." *Id*. In this case, defendants acknowledge, DOC failed to comply with the policy:

> DOC was notified of the incident within ninety days of the incident and requested that all the relevant footage, consisting of: (i) three handheld camera videos, (ii) two body-worn camera videos, and (iii) twelve Gentec Camera angles, be preserved pending its internal investigation. Although the body worn camera and handheld camera footage were properly preserved, due to an inadvertent mistake, only one of the Gentec camera angles was properly preserved along with unrelated Gentec camera footage from a different facility. Since the correct Gentec camera footage had mistakenly not been marked for preservation, that footage was deleted after ninety days, pursuant to DOC's retention policy.

*Id.*[2] "Even though the correct footage was deleted," defendants argue, "DOC took reasonable steps to preserve what it believed to be the correct footage." *Id.*

Defendants further acknowledge that the officers standing between the handheld camera and the plaintiff "completely obstruct[ed] any outside view into the cell" at critical moments. Def. 1/9/25 Ltr. at 2. However, defendants assert, "the handheld camera footage captured a clear view of the ceiling, walls, and hallway directly outside of Plaintiff's cell and reveals that there was no camera mounted directly outside of Plaintiff's cell, nor directly above plaintiff's cell." *Id.* Even if there were a Genetec camera directly outside of plaintiff's cell, it "would not have captured anything that the handheld camera footage did not," due to the knot of correctional officers in body armor inside plaintiff's cell. *Id.* at 3. Thus, defendants conclude, plaintiff was not prejudiced by the loss of the Genetec footage, which in any event was deleted under a scenario that "suggests only negligence," not intentional spoliation. *Id.* at 2-3.

In his responding letter, dated January 24 and filed February 6, 2025, plaintiff points out that the Genetec footage was available to – and actually reviewed by – the DOC personnel preparing the Incident Report, which noted that Captain Shaw deployed the spray at close range. Pl.1/24/25 Ltr. at ECF p. 5. Further, according to plaintiff, there was in fact a Genetec camera "mounted on the ceiling, directly across from 5 cell [plaintiff's cell, also known as CDU 1005], in between CDU 1002 (2 cell) and CDU 1003 (3 cell)," which, due to its height, might have provided a less obstructed view of the encounter between the Probe Team and plaintiff. *Id.* Thus, plaintiff argues, he is prejudiced by the loss of the Genetec footage, which would have helped him prove his excessive force claim. *Id.* at ECF pp. 7, 9. Plaintiff further contends that the evidence is

---

[2] Defendants did not submit the one Genetec camera angle that, they say, was "properly preserved," and do not describe what it depicts.

6

sufficient to support the conclusion that defendants' actions were "malicious and intent[ional], rather than an inadvertent mistake," *id*. at 7, and asks the Court to impose unspecified sanctions pursuant to Fed. R. Civ. P. 37(e)(2). *Id*. at ECF p. 11.

In their February 13, 2025 reply letter, defendants seemingly concede that there was a Genetec camera directly across from his cell, but assert again that none of the camera angles in the West Facility, "including the camera angle plaintiff identifies in his February 6, 2025 letter . . . offer[s] a view inside of plaintiff's cell, nor would they have on February 13, 2023." Def. 2/13/25 Ltr. (Dkt. 79) at 1-2. Even if a Genetec camera were pointed at plaintiff's cell, defendants argue, the view "would have necessarily been obstructed" by the same Probe Team members who blocked the view of the handheld camera. *Id*. at 2.

Defendants do not provide any declaration or other evidentiary support for their assertion that there was no Genetec camera with a view into plaintiff's cell. Nor is there any suggestion that the Assistant Corporation Counsel who signed both letters has personal knowledge of these facts (which cannot be either confirmed or contradicted simply by reviewing the surviving video). Plaintiff's letter is also unsworn, but appears to be based on his personal knowledge.

## **Analysis**

Spoliation of electronically stored information (ESI), including electronically stored video footage, is governed by Rule 37(e), as amended in 2015, which states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)   upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)   only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

7

      (A)      presume that the lost information was unfavorable to the party;

      (B)      instruct the jury that it may or must presume the information was unfavorable to the party; or

      (C)      dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"Rule 37(e) requires a 'three-part inquiry': (1) whether a party failed to take reasonable steps to preserve ESI that should have been preserved in the anticipation of litigation; (2) whether there has been prejudice to another party from the loss of the ESI, in which case the court may order sanctions 'no greater than necessary to cure the prejudice,' as authorized by subsection (e)(1); and (3) whether the party responsible for the spoliation 'acted with the intent to deprive another party of the information's use in the litigation,' in which case the court may impose the 'most severe of measures' enumerated in . . . subsection (e)(2)." *Ransom v. Andrews*, 2022 WL 16555362, at *3 (S.D.N.Y. Oct. 31, 2022) (quoting *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019)).

The rule "gives the court discretion[] to determine prejudice based on the particular facts before it," *Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022), but requires that it impose the "least harsh sanction that can provide an adequate remedy" for that prejudice. *Dorchester Financial Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014). Subject to that general principle, the court's discretion to determine the appropriate sanction under subsection (e)(1) is broad, and such sanctions may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 Amendments.

With regard to the first prong of the three-part inquiry, it is clear that defendants failed to take reasonable steps to preserve the Genetec surveillance video showing the February 13, 2023 UOF. As they concede, the "obligation to preserve the relevant footage arose shortly after the incident[.]" Def. 1/9/25 Ltr. at 2. Moreover, DOC promptly gathered all relevant video evidence for purposes of the Incident Report, including 13 specific Genetec camera angles in the West Facility, which, according to the Incident Report, "were reviewed for February 13, 2023, from 12:51 hours to 13:33 hours," and "depict the incident" as narrated in the report. Incident Rep. at DEF000042. At that point, DOC was required by its own video retention policy to preserve the Genetec video for at least four years. Def. 1/9/25 Ltr. at 2. But due to an "inadvertent mistake," the Genetec footage was not "marked for preservation," and was therefore deleted after 90 days. *Id*. Defendants do not further describe the "inadvertent mistake," except to say that it resulted in the preservation of "unrelated" Genetec footage "from a different facility." *Id*. Thus, the record shows that, despite identifying the correct Genetec angles, reviewing the footage, and confirming that those angles "depict[ed] the incident," DOC failed to preserve the Genetec footage as required by law and by its own video retention policy. *See Castro v. Smith*, 2023 WL 5371311, at *10 (S.D.N.Y. Aug. 22, 2023) ("As DOC failed to suspend their routine document destruction policy, DOC failed to take reasonable steps to preserve relevant ESI.").[3]

The second prong – prejudice – is met as well. It is of course possible that, due to the positions of the cameras and/or the crowd in plaintiff's cell, the missing Genetec angles would not

---

[3] The defendants in this action are DOC Commissioner Louis Molina, Captain Shaw, several other individual DOC employees, and the City of New York. Although there is no evidence that any of the individual defendants were personally responsible for the loss of the Genetec video footage, DOC's conduct is appropriately imputed to them for purposes of Rule 37(e). *See Castro*, 2023 WL 5371311, at *7 ("DOC's and Defendants' interests are 'sufficiently aligned and closely interrelated' such that imputing DOC's alleged spoliation to Defendants is appropriate.") (quoting *Gross v. Lunduski*, 304 F.R.D. 136, 143 (W.D.N.Y. 2014)).

provide a significantly better view of Captain Shaw's actions than the handheld video does. But a party seeking spoliation sanctions need not prove the precise content of the missing files or videos. As the Second Circuit explained (in a case involving intentional spoliation), "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998). Thus, "[i]t is sufficient [to establish prejudice] if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case." *Karsch*, 2019 WL 2708125, at *21. Here, given that the Genetec cameras were – according to plaintiff – mounted on the ceiling outside of his cell, it is at least "plausible" that the missing footage would assist the trier of fact in determining whether Captain Shaw's use of the chemical spray was necessary to obtain compliance, as the Incident Report concludes, or unnecessary and punitive, as alleged by plaintiff. Thus, the destruction of the Genetec footage has deprived plaintiff of relevant and potentially helpful evidence, constituting prejudice. *See Castro*, 2023 WL 5371311, at *11 (finding that improperly deleted Rikers Island video "may have shown physical effects of the Incident helpful to Plaintiff's claims," and that "he has therefore been prejudiced by its destruction"); *Man Zhang v. City of New York*, 2019 WL 3936767, at *8 (S.D.N.Y. Aug. 20, 2019) (where spoliated video footage could have corroborated testimony that plaintiffs' decedent "consistently complained of chest pain" in the months before he died of heart disease at Rikers Island, prejudice was established, and sanctions were warranted).

The third prong – whether defendants intended to deprive plaintiff of the use of the Genetec footage in this action – is not met. There is no direct evidence that the unnamed DOC personnel responsible for preserving *all* video evidence depicting the February 13, 2023 UOF acted

intentionally, rather than negligently, in failing to preserve the Genetec angles. Nor can the Court infer the required intent simply from the fact of that failure. Consequently, sanctions under Rule 37(e)(2) are unavailable. *See Hoffer v. Tellone*, ___ F.4th ___, 2025 WL 479041, at *4 (2d Cir. Feb. 13, 2025) ("A party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2)."); *Bursztein v. Best Buy Stores, L.P.*, 2021 WL 1961645, at *8-9 (S.D.N.Y. May 17, 2021) (finding that sanctions were available under subsection (e)(1), but not (e)(2), due to a lack of sufficient evidence that defendant acted with the intent to deprive plaintiff of the use of the evidence in litigation).

The only question left, then, is what sanction is appropriate under Rule 37(e)(1) to remedy the prejudice to plaintiff. Because plaintiff is proceeding pro se and *in forma pauperis* (*see* Dkt. 4), the Court cannot award him his (non-existent) attorney's fees or costs. It can, however, rebalance the scales by "permitting the parties to present evidence and argument to the jury regarding the loss of information," as specifically contemplated in the advisory committee notes. *See Castro*, 2023 WL 5371311, at *13 ("This sanction will allow Plaintiff to inform the jury that this relevant evidence once existed, and thus remedy DOC's negligence in destroying the video."); *Ransom*, 2022 WL 16555362, at *5 ("[T]he appropriate remedy for the negligent spoliation of the relevant video footage is to permit plaintiff to present evidence to the jury (should this action reach trial) that surveillance video of the incident existed; that the video could and should have been preserved within the 90-day window; but that, due to mistakes made on two separate occasions, it was not."); *Equinox Holdings, Inc.*, 592 F. Supp. 3d at 180 (permitting plaintiff to present evidence to the jury that evidence was lost as a Rule 37(e)(1) sanction); *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *14 (S.D.N.Y. Dec. 19, 2017) (similar).

Here too, the "appropriate remedy for the negligent spoliation of the relevant video footage," *Ransom*, 2022 WL 16555362, at *5, is to permit plaintiff to present evidence to the jury (should this action reach trial) that Genetec surveillance video of the incident existed; that the video was reviewed for purposes of the Incident Report and should have been preserved thereafter; but that, due to a mistake made by DOC staff, it was not, and cannot now be restored. However, because sanctions are being imposed pursuant to subsection (e)(1) only, the jury should not be instructed that it "may or must presume" that the evidence was unfavorable to the defendants. Fed. R. Civ. P. 37(e)(2).

## Conclusion

For the foregoing reasons, defendants are sanctioned, pursuant to Fed. R. Civ. P. 37(e)(1), to the extent set forth above.

Dated: New York, New York  
   February 25, 2025

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**